**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **K.H. and S.H.**

**No. 21-0405** (Kanawha County 20-JA-661 and 20-JA-662)

**MEMORANDUM DECISION**

Petitioner Father W.H., by counsel Kevin P. Davis, appeals the Circuit Court of Kanawha County's April 21, 2021, order terminating his parental rights to K.H. and S.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth G. Kavitz, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues the circuit court erred in adjudicating him as an abusing parent and in terminating his parental rights to the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Throughout the year 2020, petitioner shared a home with the mother and their child, K.H. (then three months old) and A.F. (then four years old), who was a child from the mother's prior relationship.[2] Petitioner had a second child, S.H. (then six years old), who lived with her mother and exercised visitation with petitioner. One day in December of 2020, the mother left K.H. and A.F. in the sole care of petitioner, a registered sex offender since 2013, while she worked outside

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]As petitioner is not the biological father of A.F., the circuit court did not terminate his parental rights to this child.

of the home. While in petitioner's care, K.H. suffered a broken femur, leading the DHHR to file an abuse and neglect petition.

In its petition, the DHHR alleged that petitioner was watching K.H. and A.F. while the mother was working. Petitioner stated that he was in the restroom when he heard a "thud" from somewhere in the house followed by K.H.'s crying. He stated that when he left to go to the bathroom, K.H. was on the couch by a pillow. When he returned to K.H., the child "was not moving his feet like he normally does." Petitioner asserted that then four-year-old A.F. told him that she picked up and dropped K.H. while petitioner was in the bathroom. Nevertheless, petitioner did not call for emergency services or notify the mother. The DHHR alleged that the mother stated that K.H. was crying when she returned from work that evening, some three hours after petitioner stated the incident occurred. While bathing the infant, the mother noticed K.H. was not moving his feet as normal. The parents did not take the child for a medical evaluation until eight o'clock the following morning, at which point K.H. was diagnosed with a broken femur. The DHHR alleged that K.H.'s attending physician opined that the injury could not have been the result of A.F. falling on top of K.H., as alleged by the parents, and believed that K.H. suffered a non-accidental injury while in petitioner's care. The DHHR further alleged that petitioner was a registered sex offender and was left unsupervised with the children while the mother worked.

The DHHR filed an amended petition in February of 2021, alleging that A.F. was forensically interviewed and disclosed that petitioner sexually abused her while the mother was at work. The DHHR also clarified that petitioner was required to register for life as a sex offender as a result of his conviction in 2013 for three counts of sexual assault in the third degree.[3]

The circuit court convened for an adjudicatory hearing later in February of 2021. The DHHR presented the testimony of A.F.'s forensic interviewer. The interviewer testified that she interviewed A.F. to gather information regarding K.H.'s injuries, and the child denied that she hit or hurt K.H. or that she witnessed anyone else hurt the child. According to the interviewer, the child spontaneously reported that petitioner "touched [her] the other day," that he "hurt [her] and made [her] cry," and, and upon further questioning, she made graphic and specific disclosures of sexual abuse by petitioner. The interviewer testified that the child remembered the location of the abuse, petitioner's clothing at the time, and the pain related to the events. The interviewer further testified that A.F. referred to petitioner as "daddy" throughout the interview and identified no other adult males in her home. On cross-examination, the interviewer stated that she reviewed A.F.'s physical examination after the interview and noted that it was a "normal" exam. However, she further testified that ninety-five percent of children who disclose sexual abuse have "normal" exams. Notably, petitioner did not object to the interviewer's testimony nor did he move for the child to provide *in camera* testimony.

---

[3]It appears from the record that the victim of petitioner's crime was a minor female who was unrelated to petitioner.

The mother testified that the night K.H. was injured was the first night that petitioner had watched the children alone. She admitted that petitioner had informed her about his criminal history; however, she asserted that petitioner told her that the sexual assault charges had been dismissed, and she denied knowing that petitioner was a registered sex offender.

Petitioner corroborated the mother's testimony that the night K.H. was injured was the first night that he was alone with the children. He denied that he injured K.H. or sexually abused A.F. Petitioner testified that K.H. rolled off the couch while he was watching the child and that he caught the three-month old by the leg before he hit the floor. He explained that he "caught [K.H.'s] leg and had him, like, off the ground a little bit, but he was partially touching the ground." Afterward, petitioner changed K.H.'s diaper and noticed the child kicking and acting unusual. Petitioner testified that K.H. was crying after the incident but stated that the child "normally does that" and the crying did not concern him. Upon further questioning, petitioner explained that he attempted to soothe the child, but K.H. would not calm down. He testified that he brought the issue to the mother's attention as soon as she arrived home, some three hours later. In contrast to the mother's testimony, he stated that he informed the mother that he was a registered sex offender and that she was aware of that fact. Petitioner further admitted that he was "probably not" permitted to have unsupervised contact with someone else's children.

The investigating DHHR worker testified that neither petitioner nor the mother provided clear details regarding how K.H.'s injury occurred. She explained that petitioner and the mother provided "so many stories" regarding the incident and that the parents' explanations were not consistent. The worker also testified that the mother previously admitted that petitioner watched the children alone every other night while she worked.

Finally, R.A., who is the biological mother of S.H., testified that she has had full custody of S.H. since 2014, and petitioner exercises video visitation with the child on occasion, which she supervises. R.A. testified that during one video visitation, petitioner had stated that he was watching the children alone at his home while the mother was working.

Ultimately, the circuit court found that the testimony of petitioner and K.H.'s mother was not credible. It concluded that petitioner engaged in sexual abuse of A.F. and failed to seek timely medical care for K.H. The circuit court adjudicated petitioner as an abusing parent and scheduled a dispositional hearing.

In April of 2021, the circuit court held the final dispositional hearing. Petitioner was present in person and by counsel. A DHHR case worker testified that petitioner was incarcerated for the sexual abuse of A.F. and that prior to his incarceration, petitioner was not compliant with the services offered by the DHHR. The DHHR moved to terminate petitioner's parental rights. Petitioner presented no evidence. Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was in the best interests of the children.

Petitioner now appeals the circuit court's April 21, 2021, order that terminated his parental rights to the K.H. and S.H.[4]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. He first asserts that he did not fail to provide K.H. timely medical care as he sought care for the child the morning after the child was injured. Furthermore, petitioner argues, for the first time on appeal, that the evidence that he sexually abused A.F. was hearsay. Upon our review, we find petitioner is entitled to no relief on appeal.

In regard to the adjudication of allegations properly alleged in a child abuse and neglect petition, this Court has held that

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will

---

[4]The circuit court also terminated the parental rights of the mother of K.H. and A.F. A.F.'s father's parental rights were also terminated. The permanency plan for K.H. and A.F. is adoption in their current foster placement. S.H. remains with her nonabusing mother, R.A., and has achieved permanency in her care.

produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id* (citation omitted).

Critically, petitioner did not object to the testimony of A.F.'s forensic interviewer below. This Court has said that

> [w]hen a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the court of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs.

*State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996). Further, we have also said that

> [t]he West Virginia Rules of Evidence declare that parties must object to the wrongful offer of evidence at a particular time and with reasonable specificity. The failure to object at the time and in the manner designated by Rule 103(a) of the West Virginia Rules of Evidence is treated as a procedural default, with the result that the evidence, even if erroneous, becomes the facts of the case. West Virginia practice imposes the same duty of diligence in regard to nonjury cases. Silence in the circuit court typically constitutes a waiver of objection. *See* W.Va.R.Evid. 103(a)(1).

*In Interest of Tiffany Marie S.*, 196 W. Va. at 234, 470 S.E.2d at 188. Moreover, "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 679 S.E.2d 650 (2009). Because petitioner failed to object to this testimony at the time it was offered, he has waived the issue on appeal.

Further, considering the evidence produced at the adjudicatory hearing, we find no error in the circuit court's finding that petitioner sexually abused A.F. "Sexual abuse may be proven solely with the victim's testimony, even if that testimony is uncorroborated." *In re K.P.*, 235 W. Va. 221, 230, 772 S.E.2d 914, 923 (2015). The forensic interviewer testified that A.F. reported detailed accounts of sexual abuse by petitioner. A.F. reported that petitioner sexually abused her on multiple occasions and was able to recall details, such as the location of the abuse, petitioner's clothing, and the physical pain associated with the event. The circuit court found that this was clear and convincing evidence that petitioner had sexually abused the child, and we agree. Moreover, this evidence is sufficient to find that K.H. and S.H. were also abused children. *See* Syl. Pt. 3, *In re A.M.*, 243 W. Va. 593, 849 S.E.2d 371 (2020). Finally, as the circuit court

concluded that the children were abused children, it did not err in adjudicating petitioner as an abusing parent.[5] Accordingly, petitioner is entitled to no relief in this regard.

Petitioner also argues on appeal that the circuit court erred in terminating his parental rights rather than imposing a less-restrictive dispositional alternative. Petitioner offers no rationale as to why a less-restrictive dispositional alternative is reasonable in this case, except that the circuit court must apply the least-restrictive dispositional alternative. Notably, petitioner does not contest (or even acknowledge) the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon a finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d)(5) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child.

Here, the circuit court found that petitioner sexually abused A.F. Therefore, the circuit court's finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected is fully supported by the record. Finally, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports a finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children, we find that the circuit court did not

---

[5]West Virginia Code § 49-1-201 defines "abusing parent" as "a parent, guardian, or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect."

err in imposing the most drastic remedy available: the termination of petitioner's parental rights. Accordingly, we find petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 21, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

7